And this report paterns from a Different judgement of Non-dissentment that supposed to be non-dissenting patents. As to the 7th product 1 patent, the Dissident Court applied the wrong legal standards in respect to inducement and then resolved a dispute fact as to whether or not there is a substantial non-dissenting induce. As to the 9th and 6th patents, the Dissident Court wrongly read in a purposive requirement that it should not incline one and look to products that are not induce. Even if you are correct that the Dissident Court erroneously read a substantial non-dissenting use prong into inducement, why shouldn't we look at whether or not you have proffered any evidence of claiming an issue of material theft on the point of direct infringement if it's fully reasoned, fully argued. We've got some redistricting below and the Dissident Court may not have decided in this case, but it's in an alternative basis. And it is the subject of their entire brief. So I don't think they're standing here arguing that substantial non-dissenting use is absolutely a prong on inducement and the Dissident Court was right. So why shouldn't we go ahead and reach it? Because there's a dispute of fact on that point, Your Honor. So if you were to reach it, the right to vote would be in your hands to let the jury decide. I mean, it's definitely about the level. Well, the question is whether circumstantial evidence has been established or not. Because you don't, while you've designated witnesses who have testified to the record, it would be an opposite of that. Because I understand that there are declarations of negligence and competition. So we don't have a direct evidence of direct infringement. You're relying on circumstantial evidence, right? Well, there's two points to that. One is a matter of law and one is a matter of fact. This Court's take-all is clear in Golden, Blonde, and Moose, just like two cases, that direct infringement can be proved by circumstantial evidence and be a courtroom rule. Otherwise, that would be a rule of evidentiary procedure beneath the patent law. It doesn't apply to any civil action, which I'm aware of. We can hear that. I think we've all recognized there's an election law, there's Moose, and there's Bison, and it's just the universe of the circumstantial evidence cases in the inducement context on direct infringement. And they've recognized the topical circumstantial evidence. They split 50-50. You've got an election law, and you've got Moose on one side, and Bison is just the one on the other. And the question is, where do you fall in that spectrum? I mean, where do you think you fall? But I don't think that anybody's going to tell you that circumstantial evidence can't ever be enough, but you have to show us why it is. We do acknowledge, as Judge Dreis pointed out, that you did not proffer any actual instances of direct infringement use. You are relying exclusively on circumstantial evidence. Well, our expert in the testing did infringe and did finalize, which was an infringement use, and did testify in the opening report that it is a normal use to finalize. Okay, but that's your expert doing it. That's not an evidence of infringement, because you asked me to do it. That can't ever constitute the direct infringement that would be a predicate for an inducement. Even so, it is because that expert testimony distinguishes us from the indigent, because the indigent report pointed out that there was no such expert testimony. So here we have that testimony. Also, I think it's relevant to this Court, especially since the district court exercised its discretion not to grant summary judgment on this case. The district court was aware, by the time it ruled on the summary judgment motion, that we had witnesses debating it. We offered three witnesses, but he allowed us one witness, who was prepared to testify at trial, that he did. He did not have any evidence, then, on summary judgment at this point. We can't say there was evidence of direct infringement. We offered none in regards to the summary judgment motion. In fact, we came along later and said, at trial, at a pre-trial conference, we would like to have witnesses to show direct infringement. That's all fine and dandy, but it's not part of the summary judgment record upon which this case was decided. So you may well have evidence of direct infringement. It's not on the record for our purposes, as far as I can tell. I do think it's relevant, since the district court did impeach that basis, and they did impeach that basis for very good grounds. It wasn't at a pre-trial conference. Discovery was still open when we procured those witnesses. And, in fact, it's notable that they objected to our witnesses on the grounds that such direct testimony from direct users might be prejudicial under 403 to Missouri. And now that you're arguing in court that the lack of such evidence is a basis for a firm on alternative basis to impeach by the district court. And that's just saying that we should proceed on the understanding or view that the district court here kind of was setting aside the issue of direct infringement for an evidentiary, a formal evidentiary proceeding. I think one can infer, given the state of the record at the time the district court ruled, when they decided not to base their position on the lack of direct infringement, that the district court believed there was a case back on that point. I mean, the district court didn't say there was a case back on direct infringement. It just didn't reach this ground for self-judgment. To be sure. To be sure of that. But even if one looked only at the record at that point in the district court on summary judgment, there's ample evidence here from which a reasonable jury could infer that users are finalizing. And finalizing, there's really no dispute. Finalizing is a substantial evidence, though. We've now been through this. And there's no actual direct infringement evidence. Correct? Other than circumstantial evidence. Yes, Your Honor. In the summary judgment record. But the circumstantial evidence under this court is all you've got. And the circumstantial evidence is ample. Well, sometimes it is and sometimes it isn't. Where should we draw the line as to what's sufficient and what isn't sufficient? Because we've been willing to do that in other cases. And to say this can't go to the jury is not enough circumstantial evidence here. So where should we draw the line? Well, as an initial matter to say, I don't think that when one's drawing that line, wherever it goes, it should turn on whether the evidence someone's proffering is circumstantial versus direct versus any other kind of evidence. But the rules of evidence don't draw any distinction between the weight given various kinds of evidence, as long as you have enough evidence of whatever kind from which a reasonable jury could infer the conclusion that you seek, the finding that you seek. And here we do. Here we have evidence that the standards require the test pattern and the weeding in and weeding out of this on-the-duty that they comply, the accused get it, comply with the duty. They market themselves as certified to comply with the standards. Precisely because the purpose of the standards is to allow the meeting to play in multiple recorders. And that's what consumers want in their DVDs. They want them to be able to record them. That's the point. Long-term archival storage. Significant tools. It's going to encourage users to finalize, which practices the method. So I mentioned, just by way of example, on H-12, H-5-0, important. Please read on the product package. GIFs must be finalized for playback in DVDs. An instruction manual for recording software sold by a patient at 12807. In order to improve DVD playback and overall compatibility, choose a DVD wrongfully. So they are encouraging this use, and they are discouraging multi-session use. So I don't see how they can seriously contend that a reasonable jury can't in the face of that evidence. And that argument concludes that defendant users are And I would assume that you would point out that you could just get one segment of the Hughes product as well, because they can't do this without. They all have to be finalized. If you get any sale, just get one to realize they already received it. It doesn't have to be finalized. Any time a disc is recorded, you get it once exactly right. Judging whether that is infringing Hughes. Now, if they, of course, may argue technically that's not the right way to say this stuff there, That's exactly right, Your Honor. And that's what the thing is with this case. So wherever the line is, just back to your question, wherever the line is, this line has to be here. The evidence here has to be enough to get to the jury. I mean, they can make their argument. They can make their argument that no user never finalizes. They actually don't argue that before, even in the context of their substantial, non-infringing use. So do you want us to root this issue, or just take him again on the error of the law and let the district court re-decide in the first instance of direct infringement? Well, we believe... You wanted to reach it right at the top of your paper, and now it has come, right? Should we reach it, or should we send it back and say, you messed up by substantial, non-infringing use. You have a problem with abusement. Go back to the drawing board. We'll get it all gathered around and say our views. Well, as Your Honor, we moved for summary judgment on partial direct infringement. But you didn't get it. I believe that the right answer is if the court has agreed to the question, would we just say there's a dispute of fact for a trial. I should say, that question is disbelieving to the court. But I don't think this court should do is hold that in a matter of law, no reasonable jury would conclude on this record that the user here never infringed. Let's turn to 966. There's all this language in the presentation. You really should ask about having a number of sides identified as part of the management. So what's wrong with this report? It's like a structure. You just need to have to be able to identify how many sides there are. Because that's not claim by claim one, just that. Claim one is to claim the issue. That is the ability to identify which side, the ability to identify that there's more than one side and which side is being reported is the subject of deeming the claim to be in fact. And that is the strongest reason why what the district court did here is error. The language of claim one, the plain language, is satisfied by the accused disc. All that's relating to the relevant language of claim one requires is that the information represents the number of reporting claims of the reporting medium. And here there's no dispute that C5 and C6 on the accused disc absolutely identify that there is one reporting claim. Why don't claims three and four actually support the other interpretation of the sentence? But three is saying, for example, that there's not multiple error situations that deal with the situation. And the reporting claim has two different sides to it. What the district court read in to claim one is that it identified which side of it. Well, in other districts, it would also have to identify layers and different layers, right? Well, here it does identify that they're actually Well, I mean, that's what the district court instruction is. You have to identify the reporting claims that could be different layers or could be different sides, correct? Well, in the summary judgment ruling, what the district court said is that the purpose of the tracking was to identify the side. And it found the provision that it told us that because the accused product didn't purport to do that. No, but there is a purpose on it, which I think is certain. Perhaps it's extraneous. What is the definition? In the district court's view, it has to identify multiple layers or multiple layers. Yes, but it has to identify multiple layers. What did you disagree to? I'm sorry. I thought I was reading it out. It's the district court's characterization. And I didn't read it back there because I didn't want to put it on. I think all it requires is that it identified a number of reporting claims. And on a single layer, single-sided district, that's all there is. And so here it does identify the accused if, one just focuses on the accused if, which we think is the right name for it. They've identified the limitations of Claim 1. And nothing about the language of Claim 1 requires you to say, I am the layer, and there's only one layer. It just says that it represents the number of reporting claims of the reporting meeting. And here, if each side would be fixed accurately, it represents the reporting claims of the reporting meeting. There's one claim, and it says there's one claim. So in a single-sided district, there's no reason for you to need an identifier or variable that says there's only one side. There's only one side. It averagely says there's only one side. That's correct. So if there are no layers, and the reporting claims are only on either side of this, then it doesn't have to have a layer identifier, do you mean? Well, the reporting claims would be either either layer or side. Yes, just that. So if there were a two-layer disk, either on one side or on both sides, then you would need more. So if you're reading the abstract, it's the same. You only need to have a number-of-sides identifier if you have more than one side. That's right. Maybe it's by name. Yes, we'll get to that. Any other questions? Sure, sure. What tends to be the difference between a facility and a district? Do you use different layers and planes, or is it the same? A plane could be a layer or it could be a side. The plane is broader than the layer. The reporting plane... So there are some disks that have two layers. That would be two reporting planes. Both on one side, and there's nothing on the other side. And there are disks with two planes, but one on one side and one on the other side. Okay, we'll get you to do that. Thank you. Thank you. Let me conclude the court. Let me first address the issue that Judge Crocker did in the past beside the issue of direct imprisonment. His opinion may not be crystal clear, but I can walk the court through it, and that's the ground to affirm his opinion. If I turn to his opinion as A-26 in the appendix, at the bottom of that page, this paragraph discusses the second challenge of the plaintiff's critical theory in several respects, arguing that the plaintiff has not established any underlying interest in the direct imprisonment, and then continues on. In the next paragraph, on the next page, A-27, Judge Crocker says, both theories of indirect imprisonment, that is, tributary abuse, fail if there's any substantial non-imprisonment use in these types of dynacores. Dynacore is a case where the court found there was no evidence of direct imprisonment. Dynacore, ACO, and Fujitsu are three cases where this court has found no evidence of direct imprisonment. That's what we argued below, as the court has already mentioned, in the breach, and that's what Judge Crocker decided here. Yes, Your Honor, that's exactly the next point I want to get to. This court, in several opinions, has drawn the line as to when circumstantial evidence is enough and when it's not enough. And I point to three cases, dynacore, ACO, and Fujitsu, are three cases   and a non-infringing use. In those cases, this court found there was no evidence of direct imprisonment. This court said that there is not enough circumstantial evidence to establish instances of direct infringement. So that's one side of the bar. We are like that because we have here a non-infringing use, if you don't finalize, and allegedly, an infringing use if you do finalize. We had other non-infringing defenses that the court didn't address. So we are like ACO, dynacore, and Fujitsu. Now on the other side, I point to the other non-infringement defense that raises grounds for some rejection. Yes, Your Honor. Yes, Your Honor. And I also think it was one or two others that we didn't think were as strong and we were stating for trial. Now on the other side of the line is I4I delusions. In I4I, direct infringement was stipulated. In the agreement it says that there's a stipulation and Microsoft provided them a response indicating that users had actually directly infringed. So that's why that's on the other side of the line for direct infringement. So I think delusion is really the critical case that seems to be drawing a dividing line. In the delusion case, this court was fairly clear that this really is the line. At one point, the court said, and this was on jump site page 1318, that the circumstantial evidence in this case, quote, was just barely sufficient to permit the jury to find direct infringement. So you're just barely on the other side of the line. Later in the opinion, on the next page, they said there was just, quote, more than a mere scintilla of evidence. So in that case, I4I just barely got over the bar. And so that's the case that I think sets the dividing line. We are on the other side and we are significantly different in that case for four reasons. The biggest problem is that you have domestic standards which require an equal conversation. You have instructions that suggest that people should finalize the case and show understanding. You have reason to finalize a case other than another case which is a subject reserved for them. I mean, why, as a matter of common sense, forget about the case. As a matter of common sense, why is it sufficient evidence in those two cases whether some people finally did consent to an infringement? Your Honor, a number of reasons. First of all, we turn back to Puget Sound Dining Hall, for example. There were industry standards in those cases. And you could say that somebody could practice the industry standard and ultimately could possibly infringe. And yet, in those situations, because of the non-infringing views and infringing views, the court found that circumstantial evidence is not sufficient to establish an instance of direct infringement. Well, is that really what happened quite clearly in Puget Sound? I didn't remember that case. Your Honor, Puget Sound, Puget Sound actually bores another distinction. Yeah, the distinction was that it turned off the disabled and those who were in trouble not to use it. Is that right? Do I remember? Well, I didn't know what was written in the opinion, but in the opinion, there was one situation where they found direct infringement. And that was a situation where there were customer service records that showed when net gear stores have advised customers to activate fragmentation. In those instances, it was direct infringement. It was customer service records. Other than that, though, the court found we agreed with the district court to still fail to establish an injunctive fact regarding direct infringement. It is not enough to simply show that products are capable of infringement. The patent owner must show evidence of specific instances of direct infringement. And then the court said, with the exception of the customer service records, those evidence show only that the accused products are capable of infringement. That's our case here. There's two different ways you could use it. Potentially, one way is clearly not infringement. There's no dispute if you don't file it. So now, another part of this is the question of the standards. The standards don't require finalization. If they required finalization, something would happen more naturally. Nothing would happen unless there was a report on capability. From the recorder, not from the disc. And that's one of the actually interesting ironies. This is a test having been written by the recorders for use with the recorders, which is very different than the cases here. In either line of lucid, Microsoft actually designed the software that was found not to have any substantial amount of infringement uses. Here, we haven't designed the machines. We've made the disc. This case is like the VHS tape. You have a VHS tape, you pop it in your VCR. You want to record a TV series. You may want to record episode after episode after episode,   that with a VCR. So in this case, every end user has the option and makes a decision whether or not they want to use it on any other machine. How many of these discs are sold over here? Quite a few. It's so hard to imagine there's somebody in this  who has the ability to play the numbers game and try to determine the probabilities, then there's no explanation. There was a substantial number of products in those cases. This court has shown... I'm reading from it. The standards require fragmentation. Fragmentation is optional. And if it is disabled, you have to actually permanently go in and turn it on in order to use it. That's a different picture. We're showing something that has a capability that is entirely disabled. Capability that is not required  standards. That's a  different situation. Your Honor, in this situation, you have to choose finalization. And we pointed to... I'm sorry. There are arguments that it automatically finalizes. Now, you have to select to use this at once. And we cited the manual. It shows five steps the customer has to take to finalize. It's clearly an optional choice by the customer. It doesn't happen automatically. There's nothing in the standard that makes it happen automatically. The standard simply gives it true. If the standard wanted it to happen automatically, something would happen automatically. If it required it, something would happen. The user has to select finalization, has to go through the five separate steps. And that's the only theory. I don't think that's correct. We have cited to this court an interrogatory response. We cited to this court opposed findings of fact where they said they didn't dispute it. That was the only theory. And more so what they wanted was they wanted damages for every single disc sold. They had a choice. If they wanted to go to specific instances of direct infringement, they would only be able to seek damages on those specific instances. What they wanted was damages on every single disc. That's what the damage report says. They continued to say that all discs were damaged. They made a tactical choice. They were not happy with that choice. So now here they essentially wanted to do over. The district court used the word purpose to distinguish the capable of. Capable of means sometimes it's right, sometimes it's wrong. It's like a broken clock. The court used purpose to distinguish the capable of. Purpose also appears in the prosecution history. The question is does it have to be able  identify both layers inside or doesn't it? It has a purpose to distinguish from the possibility that it could be   a single sided disk. There's no dispute that the B5, B6, B24 are for a standard that covers both a single sided disk and a double sided disk. There's no dispute that those bits identify the number of layers on one side and not on the other side. But if it is a single sided disk they are identifying all the layers. Coincidentally in that Who cares if they're doing it by coincidence if they're actually meeting the limitation of the single sided disk. Is it not ever inaccurate? About single sided disks is that if B5, B6, B24 are ever inaccurate in recording the number of layers? In that case it's coincidentally correct. Are those ever inaccurate? I don't see why they can become rejected. Because number one one other thing I mentioned a few things already in the prosecution history in that case there were only two sides. In every instance there was two sides because it was taped. But they have chosen to forego accusing all two sided disks of infringement recognizing that in a two sided disk there wouldn't be infringement. So they have accused all, they have the large segments of the market. So they have accused those infringements. They've accused only the ones that fit the claim limitation. Your Honor, that's dependent claim. Dependent claim is directed to picking the sides of the disk. Independent claim is limited to requiring an identification of the number of sides. Because it's not really identification information sometimes that's right. I would report you that the specification says something because it says you've got to have a number of sides identified. I would report you that the specification says something because it says that you've got to have a number of sides identified. Yes, Your Honor. Can you tell me where the specification says that requirement that should be ready for every claim even when a claim doesn't contain a limitation as independent claims do? I was referring to the third one. How often do we take a line in the abstract and report it to a court? You want to go to the patent itself. I'll be getting to the patent itself. It's describing  principle and it has shown in the monopoly. Your Honor, we showed the example in our community. The patent itself is       describing  and it has shown  monopoly.    is    has shown in the monopoly. Your Honor, we showed the example in our community. The patent itself is describing principle and it has shown monopoly.   we showed the example in our community.     describing principle and it has shown monopoly. Your Honor, we shown monopoly. Your Honor,  the  Your Honor, the patent itself is describing principle and it has shown monopoly. Your Honor, the patent